Filed 12/29/22  P. v. Weathers CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WINONA MARIE WEATHERS,<br><br>    Defendant and Appellant. | F082180<br><br>(Super. Ct. No. CF91438575)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

Appellant Winona Marie Weathers appeals the trial court's denial of her petition for resentencing filed under former Penal Code section 1170.95.[1]  We previously affirmed the court's order in an unpublished opinion (*People v. Weathers* (June 30, 2022, F082180 [nonpub. opn.]), concluding that Weathers was ineligible for relief as a matter of law based upon the jury's finding that the murder occurred during the commission of a robbery, and that Weathers had acted as a major participant in the robbery with reckless indifference to human life.  (Pen. Code,[2] § 190.2, subd. (a)(17).)

Our Supreme Court granted review of Weathers's case and transferred the matter back to this court with directions to vacate our decision and to reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).  In *Strong*, our Supreme Court held that a pre-*Banks*/*Clark*[3] felony-murder special circumstance finding does not render a petitioner seeking relief under section 1172.6, ineligible for relief as a matter of law. (*Strong,* at p. 703.)

We invited the parties to submit supplemental briefing concerning the effect of *Strong* on Weathers's case.  Weathers argued that *Strong* compels reversal of the trial court's order.  The Attorney General did not file a response.

In conformity with our Supreme Court's directive, we order our prior decision vacated and for the reasons stated herein, we reverse the trial court's order denying Weathers's petition for resentencing.  On remand, the trial court is directed to issue an order to show cause and to hold an evidentiary hearing on the petition (§ 1172.6, subds. (c)-(d)).

---

[1]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).  Weathers filed her petition prior to this renumbering, and she therefore referred to the statute as section 1170.95 in her petition.

[2]     All undefined statutory citations are to the Penal Code unless otherwise indicated.

[3]     *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

2.

## PROCEDURAL HISTORY

On December 4, 1992, a jury convicted Weathers of the first degree murder of William McClelland (§ 187, count 1), the robbery of McClelland (§§ 211/212.5, subd. (b), count 2), and assault with a firearm on Michael Allen (§ 245, subd. (a)(2), count 4). In addition, the jury found true enhancements alleging counts 1 and 2 occurred while Weathers was armed with a firearm (§ 12022, subd. (a)(1)), as well as a special circumstance alleging the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)).

On July 20, 1993, Weathers was sentenced to a determinate term of four years followed by a term of life without the possibility of parole for special circumstance murder.

On February 5, 2019, Weathers filed a petition for resentencing under former section 1170.95. The prosecutor opposed the petition on the ground that the robbery-murder special circumstance rendered Weathers ineligible for relief as a matter of law.

On March 22, 2019, Weathers withdrew her petition.

On November 25, 2019, Weathers filed a renewed petition.

On October 20, 2020, the trial court denied the petition.

On June 30, 2022, this court affirmed the denial of Weathers's petition. (*People v. Weathers*, *supra*, F082180.) Weathers filed a petition for review with our Supreme Court.

On October 12, 2022, our Supreme Court granted review of Weathers's case and transferred the matter back to this court for reconsideration in light of *Strong*.

## STATEMENT OF FACTS

The following statement of facts is derived from the probation officer's report in Weathers's underlying criminal case. This factual summary is recited for the limited purpose of providing context to Weathers's criminal conviction:

3.

"On December 23, 1990 at 4:52 a.m. Fresno Police Department officers were dispatched to [a condominium on] Winery Circle [in] Fresno regarding a robbery where the victim was shot in the head.  Officers located the victim, William Paul McClelland, in the garage area of the residence, and noted he had a bleeding wound in the forehead area.  Paramedics arrived and transported the victim to Valley Medical Center.

"Tanya Minnick testified that in December 1990 she resided [in a condominium on] Winery Circle [in] Fresno with her fiancee, William Paul McClelland (also called Paul McClelland).  She said they had been living together at her condominium for about six and a half months.  She reported that in August 1990 Paul McClelland was arrested and he was in jail for eight days.  Tanya said she received $750 for his bail from Winona Weathers (a defendant), and that she had given defendant Weathers a gold bangle bracelet for the bail money.

"Tanya Minnick testified that on December 23, 1990, at about 2:30 a.m., she and Paul McClelland were watching a movie at her residence.  She said defendant Weathers entered the condominium.  Tanya indicated that Winona was her best friend, and that she had given Winona a key.  She said defendant Weathers stayed at the condominium previously.  Tanya said she had watched defendant Weathers'[s] children before.  Tanya Minnick said a man had come in with defendant Weathers.  She said he was a white man, and he was wearing a Pendelton and a black baseball cap.  In Court she identified John Crisp (a defendant) as the man who first entered with defendant Winona Weathers.  Ms. Minnick said defendant Weathers asked Paul if he could get three ounces of crank, and she said she had $3,000 to spend.  Tanya said she had known Paul to sell methamphetamine in $20 amounts before. She said Paul told defendant Weathers that he could get what she wanted.

"Tanya Minnick said Paul made a telephone call, and then he left.  She said defendant Crisp then left the condominium, but he returned after a minute, and two other men were with him.  She said one of these men was wearing a long green trench coat, and a beanie cap.  She later described this as a ski cap.  Minnick said the other man was wearing Levi's, a Pendelton, and a beanie cap.  She said defendant Weathers told her that these men had come with her from Hanford, and that she was taking them back to Hanford.

"Tanya Minnick related that Paul returned home with his brother-in-law, Michael Allen.  Paul, Michael, and defendant Weathers went out to the garage, but Weathers returned to the living room.  The two men, who came into the apartment after Paul had first left, then went with defendant Weathers into the garage.  Ms. Minnick made an in Court identification of Steven McGrew (a defendant) and Johnnie Bell (a defendant) as the two men who accompanied Weathers into the garage.  Tanya said she then heard defendant Weathers say, 'This is because you

4.

owe me $1,500,' and 'Shoot him.'  She then heard sounds like pounding, and two pops.  Tanya said she ran to the garage, and she saw Paul on the floor bleeding from his head.  She said Michael was in the corner, and he had a big cut on his face.

"Ms. Minnick said the man wearing the green coat was standing over Paul's body, and the other man was standing in front of Michael.  She said the man in the green coat had a small brown revolver, and he pointed it in her direction.  Defendant Crisp then came into the garage, and he took her by the arm back into the living room.  She said he told her not to call the cops; that they would come back if she called the cops.  Tanya said as the three men were leaving she heard one of them yell, 'Get the dope.'

"Tanya Minnick testified she tried to use the telephone in the living room, but, the telephone line had been cut.  She said the three men had left, but defendant Weathers was still there.  She said Winona told her not to call the police, or they would come back and kill her.  Defendant Weathers then ran to her car, a yellow Datsun Honeybee.  Tanya said she then ran upstairs and called 911.  She said she then went to the garage to assist Paul, and she said Mike left.

"Victim William Paul McClelland was transported by ambulance to Valley Medical Center.  He was found to have a gunshot wound to the head 1 1/4 inches below the top of the head, and 1 1/2 inches to the right of the midline of the forehead.  The victim was pronounced brain dead at 9:30 a.m. on December 24, 1990.  All mechanical life support devices were removed at 9:40 a.m. on December 24, 1990.  The coroner's verdict found the cause of death to be gunshot wound to the head.  A sample of the victim's blood was taken at the hospital at 5:24 a.m. on December 23, 1990.  The analysis on the victim's blood sample was positive for methamphetamine:  0.23 mg/L.

"On December 24, 1990, at approximately 1:45 p.m., Michael Allen responded to Fresno Police Department headquarters.  He was interviewed by Detective J. Chilberto, who noted Allen had a large swelling and a bruise under his right eye.  Michael Allen reported that on Sunday morning, December 23rd, Paul McClelland had come to his home at about 2:00 or 3:00 a.m., and asked for a ride home.  Allen said when they arrived at McClelland's home, McClelland asked him to come inside to cover his back.  He said once inside the residence, he observed defendant Weathers and three males. Allen reported he followed McClelland into the garage, and they were followed by two of the males, and defendant Weathers.

"Michael Allen reported that once in the garage, the subject in the long green trench coat said, 'Let's see the dope.'  He said McClelland answered,

5.

'Where's the money?' The man in the trench coat then produced what appeared to be a .22 caliber handgun. Allen said he stated, 'What the fuck's going on?' He said the second man swung his right hand, in which he was holding a .25 caliber chrome handgun, and struck him just below his right eye. Michael said he then went down on one knee. At this time the subject in the trench coat began yelling at McClelland to get down on his knees.

"Michael Allen reported Paul McClelland said, 'What's going on Nona?' Defendant Weathers then responded, 'Fuck you Paul, you owe me money, shoot him, shoot him.' Allen said the subject in the trench coat then shot, hitting victim McClelland in the head. McClelland fell to the ground, and Tanya Minnick ran into the garage. The other subject grabbed the shooter, and said, 'Let's get out of here.'

"Detective Chilberto then showed Michael Allen a photo lineup. After viewing the photo lineup, Allen selected the photograph of defendant McGrew indicating this subject looked a lot like the male in the trench coat doing the shooting. Detective Chilberto showed Michael Allen a second photo lineup. After viewing this photo lineup, Allen selected the photograph of defendant Bell indicating he was positive this was the subject who struck him in the face with the .25 caliber handgun.

"Michael Allen reported that defendant McGrew started to come back towards him in the garage, but he threw some speakers in front of the door. He reported defendant McGrew then stuck his arm in the room, and fired about three times. Allen said that defendant Weathers had run out of the room, and he began yelling for Tanya to call the police. Michael Allen said Paul looked like he was dying. Allen said he went into a state of shock, and decided to leave and go look for the suspects. Allen said he was terribly afraid as these subjects were the kind that would come back to kill him."

## DISCUSSION

Weathers contends the trial court erroneously denied her petition for resentencing under former section 1170.95 based upon the fact that the robbery-murder special circumstance was found true more than 20 years prior to our Supreme Court's decisions in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522. The Attorney General did not file an objection disputing Weathers's contentions.

In *Strong*, our Supreme Court held that where, as here, a petitioner's case "was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him

[or her] from making out a prima facie case for resentencing under section 1172.6." (*Strong, supra*, 13 Cal.5th at p. 721.)  Our Supreme Court reasoned that section 1172.6 requires the petitioner to make a prima facie showing that he or she could not be convicted of murder under the amended versions of sections 188 and 189, and "[a] pre-*Banks* and *Clark* special-circumstance finding does not negate that showing because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements."  (*Strong*, at pp. 717-718.)

"This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*."  (*Strong, supra*, 13 Cal.5th at p. 710; see *People v. Montes* (2021) 71 Cal.App.5th 1001, 1008 [trial court may not deny § 1172.6 petition at prima facie stage based on its own determination defendant was major participant in felony and acted with reckless disregard for human life].)  Thus, "[n]either the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause."  (*Strong*, at p. 720.)

Here, the jury made its true findings on the robbery-murder special circumstance allegation more than two decades before our Supreme Court decided *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522.  Under *Strong*, those findings do not preclude Weathers from stating a prima facie case for relief.  (*Strong, supra*, 13 Cal.5th at p. 721.)

We conclude that Weathers's petition alleged the facts necessary for relief under former section 1170.95, and the superior court erred by summarily denying her petition based on the jury's finding on the special circumstance allegation.  Accordingly, we will reverse the trial court's order and remand the matter to the court with directions to issue an order to show cause and to hold an evidentiary hearing.  (§ 1172.6, subds. (c), (d);

*Strong, supra,* 13 Cal.5th at pp. 708-709; *People v. Duchine* (2021) 60 Cal.App.5th 798, 816.)

## DISPOSITION

This court's opinion filed on June 30, 2022 is vacated. The trial court's order denying Weathers's petition for resentencing under former section 1170.95 is reversed. The matter is remanded to the superior court with directions to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing. (§ 1172.6, subds. (c)-(d).)